UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GEORGE V EATERTAINMENT S.A. and
CREATIVE DESIGN FZ LLC,

                          Plaintiffs,

          -against-

ELMWOOD VENTURES LLC and ARKADY
VAYGENSBERG,

                          Defendants.

1:22-cv-08047 (JLR)

**OPINION AND ORDER**

JENNIFER L. ROCHON, United States District Judge:

Plaintiffs George V Eatertainment S.A. ("GVE") and Creative Design FZ LLC ("CDFZ" and, together with GVE, "Plaintiffs") commenced this action against Defendants Elmwood Ventures LLC ("Elmwood") and Arkady Vaygensberg ("Vaygensberg" and, together with Elmwood, "Defendants") for breach of two license agreements, trademark and trade dress infringement, and unfair competition. *See generally* ECF No. 1 ("Compl."). Pending before the Court is Defendants' motion to dismiss the Complaint and Plaintiffs' motion for a preliminary injunction.[1] For the following reasons, Defendants' motion to dismiss is GRANTED based on *forum non conveniens*. Plaintiffs' motion for a preliminary injunction is DENIED as moot.

**BACKGROUND**

Plaintiff GVE is a French corporation and CDFZ is an Emirati limited liability company.

---

[1] For purposes of this Opinion and Order, relevant filings include: Plaintiffs' Motion for a Preliminary Injunction, ECF No. 12 ("PI Motion"); Defendants' Motion to Dismiss, ECF No. 26 ("MTD"); Defendants' Memorandum of Law in Support of Defendants' MTD, ECF No. 27 ("Br."); Plaintiffs' Opposition to Defendants' MTD, ECF No. 31 ("Opp."); Defendants' Reply in Support of Defendants' MTD, ECF No. 36 ("Reply"); Plaintiffs' Sur-Reply in Opposition to Defendants' MTD, ECF No. 51 ("Sur-Reply"); and the Trademark License Agreement, ECF No. 15-8 ("TLA"), and Concept License Agreement, ECF No. 15-9 ("CLA" and, together with the TLA, the "License Agreements").

Compl. ¶¶ 1-2.[2]  Together, Plaintiffs are the developers and owners of the BUDDHA-BAR brand and concept.  *Id.* ¶ 8.  BUDDHA-BAR locations are "luxury restaurant/bar/lounges with DJs, where Pacific Rim fusion cuisine, world music, and East-meets-West decor blend together to create a unique signature experience."  *Id.* ¶ 9.  GVE owns various BUDDHA-BAR trademarks. *Id.* ¶ 16.  CDFZ owns the concept for the operation of BUDDHA-BAR locations.  *Id.* ¶¶ 17-20. Plaintiffs enforce quality-control standards at the BUDDHA-BAR locations, which include requiring licensees to follow certain operating procedures and marketing guidelines.  *Id.* ¶ 21.

Defendant Elmwood is a New York limited liability company.  *Id.* ¶ 3.  Vaygensberg is a founding member of Elmwood and responsible for its day-to-day management.  *Id.* ¶ 4.

After an earlier BUDDHA-BAR location in New York City closed, Elmwood entered into two license agreements with Plaintiffs to authorize Elmwood to operate a New York City location of BUDDHA-BAR.  *Id.* ¶ 22.  First, Elmwood and GVE entered into the Buddha-Bar Trademark License Agreement (the "TLA"), effective April 7, 2021, which granted Elmwood a license to use a BUDDHA-BAR trademark in connection with the New York City location. *Id.* ¶ 23.  Second, Elmwood and CDFZ entered into the Buddha-Bar Restaurant Concept License, effective April 7, 2021, which granted Elmwood a license to use the BUDDHA-BAR concept in connection with the New York City location.  *Id.* ¶ 24.  Elmwood opened BUDDHA-BAR New York on July 13, 2021.  *Id.* ¶ 26.

Among other obligations, the License Agreements required Elmwood to provide Plaintiffs quarterly financial statements, fees, and royalties.  *See id.* ¶¶ 36-38.  The License Agreements contain identical choice-of-law and forum-selection clauses: "All disputes arising out of or in connection with the present contract shall be governed by and construed in

---

[2] Unless otherwise noted, the Court takes the facts stated herein from the Complaint and considers them true for purposes of the motion to dismiss.

accordance with the laws of England and the parties irrevocably submit to the exclusive jurisdiction of the Courts of London." TLA ¶ 16.1; CLA ¶ 18.1. The TLA identifies by registration number at least one BUDDHA-BAR trademark and addresses "any infringement against the Trademark" (TLA at p. 2 & ¶ 7.1), and the CLA addresses "infringement against the [BUDDHA-BAR] Concept" generally (CLA art. 10). The License Agreements contain several provisions concerning the effect of their termination or expiration and provide post-termination obligations. Compl. ¶¶ 48-50; *see* TLA art. 13; CLA art. 15.

On June 29, 2022, Plaintiffs delivered to Elmwood a Notice of Default. Compl. ¶ 41. Plaintiffs allege that Elmwood breached several obligations under the License Agreements, including obligations to provide financial statements, pay the license fee installment, and pay royalties due. *Id*. Defendants confirmed receipt of the Notice of Default. *Id*. ¶ 43. Plaintiffs allege that, because Elmwood breached the License Agreements and did not cure those breaches within 30 days of the Notice of Default, the License Agreements terminated on July 29, 2022. *Id*. ¶¶ 42, 44, 46. Plaintiffs allege that Elmwood has not satisfied its "post-termination obligations" pursuant to the License Agreements and "continued to operate" BUDDHA-BAR New York since July 2022. *Id*. ¶¶ 50-51. Plaintiffs further allege that Defendants' continued usage is unauthorized and infringes Plaintiffs' trademarks and concept. *Id*. ¶ 52.

Plaintiffs filed the Complaint on September 20, 2022. *See generally id.* The Complaint asserts four causes of action: (1) breach of contract against Defendant Elmwood; (2) federal trademark and trade dress infringement and counterfeiting against both Defendants; (3) federal unfair competition against both Defendants; and (4) common law trademark and trade dress infringement and unfair competition against both Defendants. *See id*. ¶¶ 53-75. On September 30, 2022, Plaintiffs filed a motion for a preliminary injunction. *See* PI Motion. On November 3,

2022, Defendants filed a motion to dismiss.  *See* MTD.  Among other grounds, Defendants seek

dismissal based on the forum-selection clauses in the License Agreements that select London

courts as the chosen forum.  *See* Br. at 8-10.  On December 22, 2022, the Court conducted an

initial pretrial conference and heard from counsel regarding the pending motions.  *See* ECF

No. 45.  At that conference, the Court granted Defendants' request to file a sur-reply to

Plaintiffs' motion for a preliminary injunction.  *Id.*  The Court subsequently granted Plaintiffs

leave to file a sur-reply to Defendants' motion to dismiss on the issue of *forum non conveniens*,

and Plaintiffs filed their sur-reply on February 17, 2023.  *See* ECF No. 50; Sur-Reply.

## LEGAL STANDARD

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign

forum is through the doctrine of *forum non conveniens*."  *Atl. Marine Constr. Co. v. U.S. Dist.*

*Ct. for W. Dist. of Tex.*, 571 U.S. 49, 60 (2013).  In deciding a motion to dismiss based on a

forum-selection clause, "a district court typically relies on pleadings and affidavits," unless

disputed facts exist that would require an evidentiary hearing.  *Martinez v. Bloomberg LP*, 740

F.3d 211, 216-17 (2d Cir. 2014).  Where a defendant moves for dismissal under Federal Rule of

Civil Procedure 12(b)(3) based on a forum-selection clause, a court may "treat their motion as a

motion to dismiss for *forum non conveniens*."  *SingularDTV GmbH v. LeBeau*, No. 21-cv-10130,

2022 WL 6771081, at *3 (S.D.N.Y. Oct. 11, 2022); *see Martinez*, 740 F.3d at 214, 216

(affirming dismissal under *forum non conveniens* where the defendant moved under Rule

12(b)(3)); *AMTO, LLC v. Bedford Asset Mgmt., LLC*, 168 F. Supp. 3d 556, 563 n.8 (S.D.N.Y.

2016) (construing motion "to enforce the forum-selection clause under [Rule] 12(b)(3) . . . as

proceeding under the forum non conveniens doctrine").

"Determining whether to dismiss a claim based on a forum selection clause involves a

four-part analysis." *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007).  Initially, the

court considers: "(1) whether the clause was reasonably communicated to the party resisting

enforcement; (2) whether the clause is mandatory or permissive, i.e., . . . whether the parties are

required to bring any dispute to the designated forum or simply *permitted* to do so; and (3)

whether the claims and parties involved in the suit are subject to the forum selection clause."

*Martinez*, 740 F.3d at 217 (quoting *Phillips*, 494 F.3d at 383) (internal quotation marks omitted).

"If the forum clause was communicated to the resisting party, has mandatory force and covers

the claims and parties involved in the dispute, it is presumptively enforceable." *Phillips*, 494

F.3d at 383.  "A party can overcome this presumption only by (4) 'making a sufficiently strong

showing that enforcement would be unreasonable or unjust, or that the clause was invalid for

such reasons as fraud or overreaching.'"  *Martinez*, 740 F.3d at 217 (quoting *Phillips*, 494 F.3d

at 383-84).

     "The overriding framework governing the effect of forum selection clauses in federal

courts . . . is drawn from federal law." *Id*.  To determine whether to enforce a forum-selection

clause, i.e., step four of the analysis, courts apply federal law.  *See id*.  "In answering the

*interpretive* questions posed by parts two and three of the four-part framework, however, [courts]

normally apply the body of law selected in an otherwise valid choice-of-law clause." *Id*. at 217-

18.  Where the parties' briefs do not rely on the law chosen in the agreement, the court may

instead interpret the forum-selection clause under federal law and general contract principles.

*See id*. at 223 ("Just as parties are free, via a choice-of-law clause, to select the law to govern the

interpretation of a forum-selection clause, nothing prevents the parties in litigation from

choosing not to 'rely on any distinctive features of [the selected law] and [instead to] apply

general contract law principles and federal precedent to discern the meaning and scope of the

forum clause.'" (quoting *Phillips*, 494 F.3d at 386)); *Donnay USA, Ltd. v. Donnay Int'l S.A.*, 705

F. App'x 21, 24 n.3 (2d Cir. 2017) (affirming interpretation of a forum-selection clause under

"general contract principles" because "the parties did not brief British law before the district

court").

## DISCUSSION

Defendants argue that this case should be dismissed under *forum non conveniens* because

the parties selected the "Courts of London" – not the Southern District of New York – as the

chosen forum in the License Agreements.  Br. at 8; *see* TLA ¶ 16.1; CLA ¶ 18.1.  Specifically,

Defendants argue that the forum-selection clauses were reasonably communicated to Plaintiffs,

are mandatory in nature, encompass all of the claims asserted, and Plaintiffs have not rebutted

their presumptive enforceability.  *See* Br. at 8-10; Reply at 2-4.  Plaintiffs argue that the forum-

selection clauses do not apply here because Plaintiffs' claims arise independently from the

License Agreements and the forum-selection clauses did not survive termination of the License

Agreements.  *See* Opp. at 5-7; Sur-Reply at 1-3.  Plaintiffs further contend that England is not the

more convenient forum to hear this dispute.  *See* Sur-Reply at 1.  The Court agrees with

Defendants – the parties' forum-selection clauses apply and should be enforced.

## I.  Threshold Issues

The Court will address two threshold issues before proceeding to the four-part

framework.  First, Defendants initially moved to enforce the forum-selection clauses pursuant to

Federal Rule of Civil Procedure 12(b)(3).  *See* Br. at 10.  In opposition, Plaintiffs indicated that,

under the Supreme Court's decision in *Atlantic Marine*, the proper procedure for moving to

dismiss based on a forum-selection clause is the *forum non conveniens* doctrine and not

Rule 12(b)(3).  *See* Opp. at 8.  In reply, Defendants agreed that *forum non conveniens* was the

proper vehicle and sought dismissal on that basis.  *See* Reply at 3-4.  The Court afforded

Plaintiffs an opportunity to address that argument in a sur-reply, which Plaintiffs thereafter

submitted on February 17, 2023.  *See generally* Sur-Reply.

Prior to the Supreme Court's decision in *Atlantic Marine*, no precedential authority

"specifically designated a single clause of Rule 12(b) – or an alternative vehicle – as the proper

procedural mechanism to request dismissal of a suit based upon a valid forum selection clause."

*TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 475 (2d Cir. 2011) (quoting *Asoma Corp. v.*

*SK Shipping Co., Ltd.*, 467 F.3d 817, 822 (2d Cir. 2006)) (internal quotation marks omitted).  In

*Atlantic Marine*, the Supreme Court "merely clarified the procedural vehicle through which

forum selection clauses are enforced and did not significantly alter the substantive analysis of the

clauses."  *AMTO, LLC*, 168 F. Supp. 3d at 563 n.8.  Since *Atlantic Marine*, the Second Circuit

has construed Rule 12(b)(3) motions to dismiss based on a forum-selection clause as motions

under the *forum non conveniens* doctrine.  *See, e.g.*, *Martinez*, 740 F.3d at 214, 216 (affirming

dismissal under *forum non conveniens* where the defendant moved under Rule 12(b)(3)); *AMTO,*

*LLC*, 168 F. Supp. 3d at 563 n.8 (construing Rule 12(b)(3) motion as a motion to dismiss under

*forum non conveniens*); *SingularDTV GmbH*, 2022 WL 6771081, at *3 (same).  Accordingly, the

Court will construe Defendants' Rule 12(b)(3) motion as a motion based on *forum non*

*conveniens*.

Second, as stated above, a forum-selection clause is generally interpreted according to the

law selected in a valid choice-of-law provision.  *See Martinez*, 740 F.3d at 217-218.  Here, the

License Agreements contain identical provisions selecting "the laws of England."  TLA ¶ 16.1;

CLA ¶ 18.1.  However, neither party cites English law in their briefs; instead, they rely on

federal law and general contract principles when interpreting the forum-selection clauses.  *See*

*generally* Br. at 8-10; Opp. 5-8; Reply at 2-4.  Accordingly, the Court will follow the parties and construe the clauses under federal law and general contract principles.  *See Martinez*, 740 F.3d at 223.[3]

### A.  The Clauses Were Reasonably Communicated and Are Mandatory

The parties do not dispute that the forum-selection clauses in the License Agreements were reasonably communicated to Plaintiffs.  *See* Br. at 8-9; *see generally* Opp. at 5-8.  Indeed, Plaintiffs are signatories to the agreements.  *See* TLA at 15, 17; CLA at 24-25.  Therefore, the first prong of the four-part analysis for determining whether to dismiss a claim based on a forum-selection clause is satisfied.  *See Martinez*, 740 F.3d at 217 (holding that the first prong is satisfied where "the clause was reasonably communicated to the party resisting enforcement" (quoting *Phillips*, 494 F.3d at 383)).

The parties similarly do not dispute the second prong, *i.e.*, that the forum-selection clauses are mandatory.  *See* Br. at 8-10; *see generally* Opp. at 5-8.  The clauses provide that "the parties irrevocably submit to the exclusive jurisdiction of the Courts of London."  TLA ¶ 16.1; CLA ¶ 18.1.  This is "precisely the type of language that courts have routinely relied upon to find forum selection clauses to be mandatory."  *Moose Toys Pty, Ltd. v. Creative Kids Far E. Inc.*,

---

[3] In any event, it appears that English law is equally, if not more, generous in its interpretation of forum-selection clauses than federal law, and the Court would likely reach the same result in this case if it were to apply English law.  Under English law, forum-selection clauses "in an international commercial contract should be liberally construed" and the "words 'arising out of' should cover every dispute except a dispute as to whether there was ever a contract at all."  *Martinez*, 740 F.3d at 224 (internal citations omitted).  Courts applying English law construe forum-selection clauses "widely and generously," including over claims of "copyright infringement," and "[t]he scope of a forum selection clause does not turn on 'whether an ingenious pleader could frame a cause of action without actually mentioning the . . . Agreement."  *Id*. at 224-30 (internal citations omitted).  English courts presume that such a clause "encompasses all disputes involving the relationship into which the contracting parties entered."  *Id*. at 224-25 (internal citations omitted).  Accordingly, the Court would likely find that under English law the forum-selection clauses are mandatory and encompass Plaintiffs' claims.

195 F. Supp. 3d 599, 603-04 (S.D.N.Y. 2016) (finding forum-selection clause mandatory because it provided that "each party submits to the exclusive jurisdiction of the courts of Victoria, Australia"); *see Phillips*, 494 F.3d at 386 ("A forum selection clause is viewed as mandatory when it confers exclusive jurisdiction on the designated forum or incorporates obligatory venue language."); *Cent. Nat'l-Gottesman, Inc. v. M.V. Gertrude Oldendorff*, 204 F. Supp. 2d 675, 678 (S.D.N.Y. 2002) (finding forum-selection clause was mandatory where it provided that "[a]ny disputes under" the contract were "to be decided in London according to English law").

Accordingly, the forum-selection clauses in the License Agreements were reasonably communicated to Plaintiffs and are mandatory.  *See Martinez*, 740 F.3d at 217.

## B.  The Clauses Apply to This Dispute

The parties' arguments center on whether the forum-selection clauses encompass this action.  Defendants contend that they do, since this action concerns the parties' business relationship memorialized in the License Agreements and the alleged termination of those agreements.  *See* Br. at 8-10.  Plaintiffs argue that the clauses do not apply because: (1) the claims Plaintiffs assert, except for the breach of contract claim, arise from trademark and trade dress rights Plaintiffs owned before their entry into the License Agreements; and (2) the License Agreements have been terminated and the forum-selection clauses did not survive termination. *See* Opp. at 5-8.

### 1.  The Clauses Encompass Plaintiffs' Claims

The Court finds that Plaintiffs' claims easily fall within the scope of the forum-selection clauses.  The License Agreements contain identical clauses that provide: "All disputes **arising out of or in connection with** the present contract shall be governed by and construed in

accordance with the laws of England and the parties irrevocably submit to the exclusive

jurisdiction of the Courts of London."  TLA ¶ 16.1 (emphasis added); CLA ¶ 18.1 (same).

Plaintiffs' breach of contract claim arises from Defendants' alleged breach of the License

Agreements and, therefore, is a dispute directly arising out of the License Agreements.  *See*

Compl. ¶ 53-60.  Plaintiffs' claims for trademark and trade dress infringement and unfair

competition are brought in connection with Elmwood's alleged use of the BUDDHA-BAR

trademarks and concept at their New York City restaurant – the precise subject of the License

Agreements.  *See id*. ¶¶ 61-75; *see generally* TLA; CLA.  Furthermore, the parties' relationship

emerged from and is based on "Elmwood enter[ing] into license agreements with [Defendants] to

authorize Elmwood to operate a BUDDHA-BAR location in New York . . . ."  Compl. ¶ 22.  The

TLA identifies at least one BUDDHA-BAR trademark and addresses "infringement against the

Trademark."  TLA at p. 2 & ¶ 7.1.  The CLA addresses "infringement against the [BUDDHA-

BAR] Concept" generally.  CLA art. 10.  In sum, the Court finds that all of Plaintiffs' claims

arise out of or are connected with the License Agreements, which memorialize the parties'

business relationship and relate to the BUDDHA-BAR New York location.

The forum-selection clauses in the License Agreements are substantially similar to – and

broader than – forum-selection clauses repeatedly found by courts in the Southern District of

New York to encompass trademark infringement disputes under similar circumstances.  For

example, in *SingularDTV GmbH v. LeBeau*, the court considered a forum-selection clause that

covered disputes that "arise out of or in connection to" the agreements – the same language used

in the forum-selection clauses here.  2022 WL 6771081, at *6.  There, like here, the plaintiff

asserted claims that the defendant used the plaintiff's trademarks without authorization after

termination of the license agreements.  *Id*.  The plaintiff there argued that the "trademark claims

are not encompassed by the clause because they do not involve enforcement of any obligations under the Agreement" – indeed, the agreement in that case, unlike here, did not grant the defendant permission to use the trademarks at all.  *Id*.  Nonetheless, the court rejected the plaintiff's argument and found that the claims that the defendant infringed the plaintiff's trademarks by using them without authorization after termination of the license agreements "comfortably fall within the forum-selection clause's scope."  *Id*.  The court reasoned that the "parties' business relationship was anchored in the Agreement" and the defendant's "continued use" of the trademark "has been infringing since the Agreement was terminated."  *Id*. at *7.  The court therefore dismissed the action under *forum non conveniens* pursuant to the forum-selection clause.  *Id*. at *9.

In *Production Resource Group, L.L.C. v. Martin Professional*, the court considered forum-selection clauses that applied to disputes "arising out of or relating to" the parties' license agreements.  907 F. Supp. 2d 401, 405 (S.D.N.Y. 2012).  The plaintiff brought claims alleging "post-termination infringement" by the defendant of the plaintiff's patents, and argued that forum-selection clauses in the parties' license agreements were "inapplicable, because [the p]laintiff [wa]s asserting no rights under the Agreements, but rather [wa]s merely seeking to enforce its patent rights."  *Id*. at 412.  The court determined that the phrase "relating to" fell within the "broader category" of forum-selection clauses identified by courts, which "includes terms such as 'in connection with,' 'relating to,' or 'associated with,'" in contrast to the "narrower category [that] includes terms such as 'arise out of,' 'arise from,' or 'arising under[.]'" *Id*.  "Given the broad definition of the phrase" in the parties' forum-selection clauses, the court concluded that the plaintiff's infringement claims fell within the scope of the clauses.  *Id*. at 414. The court reasoned that, "[w]hile it may be that Plaintiff does not base its patent claims on the

Agreements, that is, they do not arise from the Agreements, there is little doubt that the patent claims relate to the very agreements that governed Defendants' use of Plaintiff's patents." *Id*.

*SingularDTV* and *Production Resource Group* are not unique; courts have repeatedly enforced similar forum-selection clauses, including where the parties entered license agreements and the plaintiff subsequently asserted infringement claims. *See, e.g.*, *Donnay USA Ltd. v. Donnay Int'l S.A.*, No. 15-cv-05969, 2016 WL 9640001, at *2 (E.D.N.Y. Sept. 1, 2016) (forum-selection clause covering disputes "arising out of or in connection with" the agreement covered non-contract claims, since a "forum selection clause should not be defeated by artful pleading of claims not based on the contract containing the clause if those claims grow out of the contractual relationship, or if 'the gist' of those claims is a breach of that relationship" (internal citation omitted)), *aff'd*, 705 F. App'x 21 (2d Cir. 2017); *Rosehoff Ltd. v. Cataclean Americas LLC*, No. 12-cv-1143A, 2013 WL 2389725, at *8 (W.D.N.Y. May 30, 2013) (forum-selection clause covering disputes "arising out of, or in connection with, or resulting from" the agreement applied to infringement claims because "[n]o matter what kind of post-termination chronology plaintiffs try to establish, they cannot dispute that they allowed defendants to use the Patent and Trademark at least as of 2008, that they *dispute* whether defendants can keep using the Patent and Trademark, and that the dispute has something to do with—that is, has a *connection* with—the current state of the parties' rights under the Licensing Agreement"); *Mercury W. A.G., Inc. v. R.J. Reynolds Tobacco Co.*, No. 03-cv-05262, 2004 WL 421793, at *7 (S.D.N.Y. Mar. 5, 2004) (forum-selection clause covering disputes arising "directly or indirectly" from the agreement encompassed a trademark conversion claim because "it is readily apparent that the causes of action are the products of the contractual relationship contemplated in and memorialized by the" agreement and the plaintiff "ties its claim regarding the conversion of the . . . trademark to the

termination of the" agreement); *Direct Mail Prod. Servs. Ltd. v. MBNA Corp.*, No. 99-cv-10550, 2000 WL 1277597, at *1 (S.D.N.Y. Sept. 7, 2000) (forum-selection clause covered infringement claims because "analysis of the copyright infringement claims will inevitably require reference to rights and duties defined in the Agreement, since the Agreement was essentially a license that governed [the defendant]'s use of [the plaintiff]'s databases"); *Young Women's Christian Ass'n of U.S., Nat. Bd. v. HMC Ent., Inc.*, No. 91-cv-07943, 1992 WL 279361, at *4 (S.D.N.Y. Sept. 25, 1992) (forum-selection clause covered trademark infringement claims, even though "the action does not include any claim for breach of contract and the contract expired," because the claims "involve rights arising out of the contract that defendant might assert against plaintiff," the plaintiff's "entire business relation with defendant with respect to the . . . program stemmed from the contract between the two parties," and "[a]ny determination with respect to plaintiff's claims will require consideration of the contract and of the parties' respective rights pursuant to the contract").[4]

This case is unlike instances in which courts have found forum-selection clauses insufficiently narrow to encompass trademark claims. In such instances, the forum-selection clauses covered disputes "arising out of" or "resulting from" an agreement, but *not* "in connection with" the agreement, like the clauses at issue here. *See, e.g.*, *Phillips*, 494 F.3d at

---

[4] *See also Bense v. Interstate Battery Sys., Inc.*, 683 F.2d 718, 720 (2d Cir. 1982) (enforcing forum-selection clause applicable to disputes "arising directly or indirectly" from the agreement because, "[a]lthough the complaint was brought pursuant to federal antitrust law, the gist of" it involved termination of the contract); *Krist v. McGraw-Hill Sch. Educ. Holdings LLC*, No. 17-cv-8200, 2019 WL 10960491, at *3 (S.D.N.Y. Jan. 4, 2019) (forum-selection clause covered infringement claims where the license agreement containing the clause referred to federal copyright statutes); *Allianz Glob. Corp. & Specialty v. Chiswick Bridge*, No. 13-cv-07559, 2014 WL 4674644, at *5 (S.D.N.Y. Sept. 19, 2014) (stating that the "sweeping language used in the [parties'] forum selection clause extends to 'any dispute arising out of or in connection with' the [] Bills of Lading" and "[t]his language suggests that the [] forum selection clause encompasses *more* than a contract claim originating from the [] Bills of Lading; it also encompasses non-contract claims that arise 'in connection with' the agreement").

389-90 (determining that a copyright claim did not fall within a forum-selection clause applying to disputes "arising out of" the contract because this narrow clause did not encompass "all claims that have some possible relationship with the contract, including claims that may only 'relate to,' be 'associated with,' or 'arise in connection with' the contract" (internal citation omitted)); *Altvater Gessler-J.A. Baczewski Int'l (USA) Inc. v. Sobieski Destylarnia S.A.*, 572 F.3d 86, 90 (2d Cir. 2009) (determining that a forum-selection clause applicable to disputes "resulting from" the license agreement did not cover trademark claims).

In opposition, Plaintiffs cite only one case from this District to argue that the forum-selection clauses do not cover the non-contract claims asserted. *See* Opp. at 8 (citing *Cheever v. Acad. Chi., Ltd.*, 685 F. Supp. 914, 917 (S.D.N.Y. 1988)); Sur-Reply at 4 (same). But that case, which predates by decades the substantial line of authority cited by this Court above, is materially distinguishable from the instant dispute: the underlying publishing agreement there reflected a "general undertaking" and not a "specific assignment of copyright," the forum-selection clause applied to disputes "relating to the agreement" rather than "in connection with" the agreement, and, unlike here, the plaintiff did not assert a breach of contract claim based on the agreement. *Cheever*, 685 F. Supp. at 915-917.[5]

---

[5] Plaintiffs cite one other case for this point from outside of the Second Circuit. *See* Opp. at 8 (citing *Xiao Wei Yang Catering Linkage in Inner Mong. Co., Ltd. v. Inner Mong. Xiao Wei Yang USA, Inc.*, 150 F. Supp. 3d 71, 79-81 (D. Mass. 2015)); Sur-Reply at 4 (same). There, the plaintiffs alleged that they were fraudulently induced to enter into a contract. In the process of that fraudulent inducement the defendants misappropriated the plaintiffs' brand name, and the forum-selection clause in the fraudulently induced contract merely stated that, "[i]n the event of dispute, and arbitration or litigation is needed, the location shall be the place of registration of the Overseas Management Company." *Xiao Wei Yang Catering Linkage in Inner Mong. Co., Ltd.*, 150 F. Supp. 3d at 75, 77. Both the underlying circumstances and the contractual terms there are factually dissimilar to the instant dispute, where there is no allegation of fraud and the forum-selection clauses employ broad language widely recognized as embracing infringement disputes.

The Court is not persuaded by Plaintiffs' argument that two of its registered trademarks were not part of the License Agreements and therefore should not be covered by the forum-selection clauses. *See* Opp. at 7-8. Whether or not the two trademarks identified by Plaintiffs – U.S. Trademark Reg. Nos. 2439577 and 3363053, (*id.* at 7) – were part of the parties' License Agreements is a legal determination, not a factual allegation to be taken at face value. *Cf. Rosehoff Ltd.*, 2013 WL 2389725, at *8 (noting that the court "must accept all *factual* allegations in the complaint while avoiding inferences," which include a "*legal* conclusion or inference" about the parties' license agreements). It is not clear, as Plaintiffs contend, that the License Agreements do not involve the -577 and -053 trademarks, and Defendants contend that they *do*. *See* Reply at 3 n.1. Indeed, the CLA defines the BUDDHA-BAR "Concept" to mean "all proprietary and confidential information on the BUDDHA-BAR Restaurants" without limiting this to specific trademark registration numbers. CLA ¶ 1.3. That the "Concept" may include trademarks is confirmed by the Complaint, which alleges that the "Concept" encompasses at least one registered trademark. Compl. ¶ 19. The Complaint does not foreclose that the CLA or TLA encompass other BUDDHA-BAR trademarks as well, potentially including the -577 and -053 trademarks.

Regardless of the -577 and -053 trademarks, the parties' business relationship emerged from the License Agreements, the License Agreements and their alleged termination relate to the subject of Plaintiffs' infringement claims, and analysis of Plaintiffs' infringement claims would inevitably require reference to the License Agreements. Under these circumstances, the Court finds that all of Plaintiffs claims are subject to the forum-selection clauses in the License Agreements. *See, e.g.*, *SingularDTV GmbH*, 2022 WL 6771081, at *6 (concluding that courts "interpreting broad forum-selection clauses" like the clauses here "have held that they

encompass disputes that are more loosely connected to the contractual relationship," including where they relate "to the subject" of the agreement, are "tie[d]" to the termination of the agreement, or "inevitably require reference" to the agreement (internal citations and quotation marks omitted)).

Accordingly, the Court finds that the forum-selection clauses encompass Plaintiffs' claims.  *See id.* (finding the forum-selection clause covered all of the plaintiff's claims); *Prod. Res. Grp.*, 907 F. Supp. 2d at 418 (same).

### 2. The Clauses Survive the Alleged Termination of the License Agreements

Plaintiffs argue that the forum-selection clauses are no longer in effect because the License Agreements terminated and the forum-selection clauses did not survive termination.  *See* Opp. at 5-7.  Defendants dispute that the License Agreements were terminated.  *See* Reply at 3. Defendants further contend that allowing Plaintiffs to unilaterally declare that the License Agreements terminated, and thereafter claim that the forum-selection clauses no longer apply, would render such dispute resolution clauses meaningless.  *Id.*  The Court agrees with Defendants and finds that the forum-selection clauses survive for purposes of this action.

As an initial matter, the Court need not accept as true Plaintiffs' contention that the License Agreements terminated.  Plaintiffs correctly state the general rule that courts "accept as true the facts alleged in the complaint" on a motion to dismiss.  Sur-Reply at 1 (quoting *In re Hapag-Lloyd Aktiengesellschaft*, 573 F. Supp. 3d 934, 953 (S.D.N.Y. 2021)).  For example, Plaintiffs' allegation that Defendants delivered a Notice of Default to Elmwood factually supports Plaintiffs' argument that the License Agreements subsequently terminated.  *See* Compl. ¶ 41; Sur-Reply at 2.  However, "[a]ctual termination of the Licensing Agreement is a *legal* conclusion or inference that would flow from the notice given . . . ."  *Rosehoff Ltd.*, 2013 WL

16

2389725, at *8 ("To the extent that the legal termination of the Licensing Agreement is in dispute, the separation of pre-termination infringement and post-termination infringement is not as easy as plaintiffs suggest.").  With respect to that legal determination, Defendants have raised substantial issues as to whether the License Agreements have, in fact, terminated.  *See* Reply at 1-2.

Even if the Court accepts Plaintiffs' allegations that the License Agreements have terminated, however, the Court finds that the forum-selection clauses would survive for purposes of this action.  Courts in the Second Circuit routinely enforce forum-selection clauses after the termination of an agreement, even where the agreement – like here – does not contain a general, standalone survival clause.  In *AGR Financial L.L.C. v. Ready Staffing, Inc.*, for example, the parties entered into an agreement that contained a forum-selection clause.  99 F. Supp. 2d 399, 400 (S.D.N.Y. 2000).  The parties subsequently entered into a second agreement, which provided that the first agreement was terminated except for certain enumerated obligations that expressly survived.  *Id*.  The court held that, "[e]ven if the Agreement was terminated, its forum selection clause would still be effective."  *Id*. at 401.  The court reasoned that the parties' dispute fell within the scope of the forum-selection clause, so the clause must be enforced for purposes of that dispute.  *Id*.

In *Bense v. Interstate Battery System, Inc.*, the Second Circuit considered whether the forum-selection clause in the parties' agreement should be enforced in the plaintiff's suit for antitrust violations.  683 F.2d at 720.  The party resisting enforcement had received notice of the agreement's termination and the agreement terminated 90 days later.  *Id*. at 719.  The Second Circuit held that, although the plaintiff brought federal antitrust claims, the "gist" of those claims involved wrongful termination of the agreement, and the court therefore enforced the forum-

selection clause in the since-terminated agreement for purposes of the parties' dispute connected with that agreement.  *Id*. at 719-20.

District courts in other cases have similarly enforced forum-selection clauses in agreements where those agreements had otherwise expired or been terminated.  *See, e.g.*, *E-Z Eating 41 Corp. v. Burger King Corp.*, No. 08-cv-00775, 2008 WL 11438313, at *1 (E.D.N.Y. Mar. 27, 2008) ("[P]laintiffs' contention that the forum selection clause is unenforceable because the franchise agreement has been terminated is directly contrary to well established Second Circuit law.") (collecting cases); *Weingard v. Telepathy, Inc.*, No. 05-cv-02024, 2005 WL 2990645, at *3 (S.D.N.Y. Nov. 7, 2005) ("However, contrary to [the plaintiff]'s assertions, parties to a contract are bound by that contract's forum selection clause even after the contract has expired, where, as here, the plaintiff's claims involve rights arising out of the contract and the entire business relationship between the parties stems from that contract."); *Donnay USA Ltd.*, 2016 WL 9640001, at *5 (rejecting argument that forum-selection clause did not survive contract termination).

The Court does not agree with Plaintiffs' argument that the express survival of two other provisions in the License Agreements implies that the forum-selection clauses do not survive termination.  *See* Opp. at 6.  Absent an express indication to the contrary, the Court presumes the parties would not intend the forum-selection clause to terminate with the agreement, especially where the agreement provides for post-termination rights and obligations that could require dispute resolution in the parties' chosen forum.  *See Future Indus. of Am., Inc. v. Advanced UV Light GMBH*, No. 3:09-cv-00966, 2010 WL 7865077, at *3 (D. Conn. Sept. 1, 2010) (concluding that survival of some terms "envisions" that those terms would be subject to the forum-selection clause post-termination, and that a contrary construction would render surviving terms

18

"meaningless"), *aff'd*, 434 F. App'x 46 (2d Cir. 2011); *see also Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 208 (1991) ("We presume as a matter of contract interpretation that the parties did not intend a pivotal dispute resolution provision to terminate for all purposes upon the expiration of the agreement.").

The License Agreements contain numerous provisions that indisputably apply post-termination and do not include survival clauses. *See, e.g.*, TLA art. 13 ("The Licensee shall, no later than 60 (sixty) days following the expiration or termination of the Agreement, submit a final statement as required by Article 4 above."); CLA art. 15 (same). The Complaint expressly invokes these provisions and seeks recovery based on Elmwood's alleged failure "to satisfy any of these post-termination obligations." Compl. ¶¶ 48-50. The Court therefore rejects Plaintiffs' theory that the absence of an express survival clause applicable to a provision necessarily implies that the provision does not survive, because it would render Article 13 in the TLA, Article 15 in the CLA, and other provisions in the License Agreements effectively meaningless.

Plaintiffs cite a single unpublished case from this Circuit in support of their argument that express survival of other clauses implies that the forum-selection clauses do not survive, but that case is distinguishable for several reasons. *See* Opp. at 6 (citing *NuCurrent Inc. v. Samsung Elecs. Co.*, No. 19-cv-00798, 2019 WL 2776950, at *4 (S.D.N.Y. July 2, 2019)). In *NuCurrent*, the court found that a forum-selection clause in a preliminary non-disclosure agreement did not survive termination of that agreement. *Id*. The parties in *NuCurrent* "never entered into a licensing agreement," the non-disclosure agreement did "not confer any rights – including a right to a license – and d[id] not reflect a commitment to engage in a business relationship," and the parties expressly provided for survival of a forum-selection clause in a prior agreement but not in the non-disclosure agreement. *Id*. In contrast, here, the parties entered into two license

agreements, those agreements conferred rights and anchored the parties' business relationship, and the parties did not enter into a prior controlling agreement with an express survival clause.[6]

The Court finds *Future Industries of America, Inc. v. Advanced UV Light GMBH* instructive.  2010 WL 7865077, at *3.  There, the court rejected as "without merit" the argument – advanced by Plaintiffs here – that express survival of two clauses in the agreement "should be interpreted so as to conclude that none of the other clauses, including the forum selection cause, survive the Agreement's termination or expiration."  *Id*.  The court reasoned that, because the agreement expressly provided for the survival of other provisions, it "envision[ed] that those claims that survive the Agreement's termination will be subject to the forum-selection clause," and to hold otherwise would render the portions of the agreement that apply at termination "meaningless."  *Id*.  On appeal, the Second Circuit affirmed the determination "that the forum selection clause survived the termination of the contract."  434 F. App'x 46, 47 (2d Cir. 2011).

Furthermore, courts have enforced similar dispute resolution clauses after termination of the underlying agreement, even where those clauses were excluded from an express survival clause in the agreement.  *See, e.g.*, *In re A2p SMS Antitrust Litig.*, 972 F. Supp. 2d 465, 494 (S.D.N.Y. 2013) (enforcing arbitration provision post-termination despite its omission from an

---

[6] Plaintiffs' reliance on two other unpublished decisions is equally unavailing, as both cases (unlike here) involve contracts with express, standalone survival clauses, apply law from other Circuits or states, and are not binding on this Court.  *See* Opp. at 6 (citing *BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Rsch. Org.*, No. 2:17-cv-00503, 2019 WL 2017541, at *6 (E.D. Va. May 7, 2019) (recognizing that "some courts have held that a forum selection clause survives termination of an agreement" because "contract clauses which are procedural in nature and outline how disputes are to be resolved will survive contract termination," but finding the language in the express, standalone survival clause there indicated "the intent of the parties" for the forum-selection clause to terminate) and *TSI USA, LLC v. Uber Techs., Inc.*, No. 3:16-cv-02177, 2017 WL 106835, at *5-6, *9 (N.D. Tex. Jan. 11, 2017) (recognizing that, "[i]n the absence of contractual language expressly or implicitly indicating the contrary, a forum selection clause likely survives termination of the contract," but construing the express, standalone survival clause there as excluding the forum-selection clause and distinguishing contrary cases because "they largely do not apply California law").

express survival clause that enumerated 15 provisions that would survive); *Int'l Imaging Materials, Inc. v. Oliverio*, No. 88-cv-00638E, 1988 WL 137717, at *1 (W.D.N.Y. Dec. 20, 1988) (rejecting argument "that the expressly provided continued operation of the non-competition clauses serves to terminate by negative implication all other clauses").

Accordingly, the Court finds that the "claims and parties involved in the suit are subject to the forum selection clause[s]" and, therefore, the clauses are "presumptively enforceable." *Martinez*, 740 F.3d at 217 (quoting *Phillips*, 494 F.3d at 383).

### C.  Plaintiffs Have Not Rebutted the Presumption of Enforceability

Because the Court finds the forum-selection clauses to be presumptively enforceable, Plaintiffs bear the "heavy burden" of showing that "it would be unfair, unjust, or unreasonable" to enforce the clauses.  *Id*. at 219 (internal citations and quotation marks omitted).  A presumptively enforceable clause will not be enforced if:

> (1) its incorporation was the result of fraud or overreaching; (2) the law to be applied in the selected forum is fundamentally unfair; (3) enforcement contravenes a strong public policy of the forum in which suit is brought; or (4) trial in the selected forum will be so difficult and inconvenient that the plaintiff effectively will be deprived of his day in court.

*Id*. at 228 (quoting *Phillips*, 494 F.3d at 383) (internal quotation marks omitted).

Here, Plaintiffs do not contend that the forum-selection clauses were the result of fraud, that English law is fundamentally unfair, or that enforcement contravenes a strong public policy. Rather, Plaintiffs argue in conclusory terms that England is not the more convenient forum because it is "4,000 miles away" whereas this Court is "only blocks" from the New York City BUDDHA-BAR location.  Sur-Reply at 1.  Plaintiffs' argument misses the mark.  The fact that the parties' contractually chosen forum is farther away from Defendants' restaurant than this Court does not mean Plaintiffs "effectively will be deprived of [their] day in court."  *Martinez*,

740 F.3d at 228 (quoting *Phillips*, 494 F.3d at 383).  The parties' business relationship is international in nature and not so neatly confined within a few blocks of this courthouse. Plaintiffs themselves are two international entities, one a corporation based in France and the other a limited liability company based in the United Arab Emirates.  *See* Compl. ¶¶ 1-2. Plaintiffs describe their BUDDHA-BAR brand as "cater[ing] to an international clientele." *Id*. ¶ 13.  Plaintiffs have "developed and launched BUDDHA-BAR locations across the globe, including in Baku, Budapest, Belgrade, Caracas, Dubai, Kiev, London, Manila, Marrakech, Mexico City, Monte Carlo, New York City, Prague, Sao Paulo, and Washington DC."  *Id*. ¶ 12. Plaintiffs also have beach clubs "located in Bodrum, Crete, Mazagan, Malta, Mauritius, Montenegro, Mykonos, Santorini, Venice, and Vevey."  *Id*.  It is only Defendants – the parties seeking to litigate in England – that are based domestically; Elmwood is located in New York and its founder resides in Florida.  *See id*. ¶¶ 3-4.  Under these circumstances, Plaintiffs' conclusory argument that England is too far away is unconvincing and legally unsound.

Accordingly, Plaintiffs have not overcome the presumptive enforceability of the forum-selection clauses, and the Court finds that enforcing the clauses would not be "unfair, unjust, or unreasonable."  *Martinez*, 740 F.3d at 219.  In sum, the Court concludes that this action should be dismissed under *forum non conveniens* pursuant to the parties' agreed upon forum-selection clauses.  *See, e.g.*, *id*. at 230 (affirming dismissal based on a clause selecting English courts as the chosen forum).[7]

---

[7] The Court declines to hold oral argument because the parties submitted comprehensive briefing, including a sur-reply specifically on this issue, and oral argument would not assist the Court.  *See, e.g.*, *AD/SAT v. AP*, 181 F.3d 216, 226 (2d Cir. 1999) (holding that "a district court's decision whether to permit oral argument rests within its discretion"); *see generally* J. Rochon Individual Rules of Prac. in Civ. Cases 3(G).

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is GRANTED on the grounds of *forum non conveniens*.  Plaintiffs' motion for a preliminary injunction is DENIED as moot.  The Clerk of Court is respectfully directed to close all open motions, adjourn all conferences and deadlines, and CLOSE the case.

Dated: March 8, 2023
       New York, New York

SO ORDERED.

_Jennifer Rochon_

JENNIFER L. ROCHON
United States District Judge